**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melissa L. Hatfield,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-02842-PHX-SPL<br><br>**ORDER** |

At issue is the denial of Plaintiff Melissa Hatfield's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 9, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 10, "Def.'s Br."), and Plaintiff's Reply (Doc. 12, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 8, R.) and now reverses the Administrative Law Judge's decision (R. at 21–35) as upheld by the Appeals Council (R. at 1–3).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on June 10, 2014 for a period of disability beginning April 28, 2014. (R. at 21.) Plaintiff's claim was denied initially on November 17, 2014 (R. at 21), and on reconsideration on June 25, 2015 (R. at 21). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on April 27, 2017. (R. at 21.) On August 18, 2017, the ALJ denied Plaintiff's Application.

(R. at 35.) On July 13, 2018, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–3.) On September 11, 2018, Plaintiff filed this action seeking judicial review of the denial.

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following alleged impairments: lupus; Sjögren's syndrome; bilateral hand osteoarthritis; bilateral knee osteoarthritis; fibromyalgia; degenerative disc disease; asthma; Hashimoto's thyroiditis; headaches; and depression. (R. at 23–24, 33.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 25.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)" in a role such as phone operator or clerical worker. (R. at 27, 35.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration: (1) the ALJ erred in rejecting the opinion of Plaintiff's primary care physician, Dr. Joel Edelstein; (2) the ALJ erred in rejecting the Plaintiff's symptom testimony; and (3) the ALJ erred by relying on vocational expert testimony given in response to an incomplete hypothetical question. (Pl.'s Br. at 1.)

## A. The ALJ Erred in Rejecting the Opinion of Plaintiff's Primary Care Physician

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.*

Given this hierarchy, if the treating physician's evidence is controverted by a nontreating or nonexamining physician, the ALJ may disregard it only after "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, the ALJ failed to provide a specific and legitimate reason based on substantial evidence in the record for rejecting the opinion of Plaintiff's primary care physician, Dr. Edelstein. On March 31, 2017, in contrast to nonexamining physicians, Dr. Edelstein opined that Plaintiff experienced pain, fatigue, and weakness as a result of her impairments that would limit her ability to do the following in a work setting: concentrate, maintain interpersonal relationships, respond to customary work pressures or stress, and provide consistent effort. (R. at 990.) Additionally, Dr. Edelstein believed Plaintiff's impairments would likely produce good days and bad days, and he estimated Plaintiff would miss more than four days of work per month as a result of her impairments or treatment for the same. (R. at 990.)

The ALJ assigned "little weight" to Dr. Edelstein's opinion, reasoning it was

inconsistent with "repeated" physical examinations, which revealed the following:

> no abnormalities of the skin, neck, head, ears, nose, mouth, throat, lungs, heart, or abdomen; no edema, clubbing, cyanosis, or carotid bruits; intact cranial nerves; full motor strength throughout; no crepitus, swelling, or deformities of the joints; full range of motion in the joints and cervical spine; no muscle spasms; intact sensation; no tenderness in the cervical, thoracic, or lumbar spine; normal motor function; and normal gait.

(R. at 30.) In doing so, however, the ALJ failed to cite evidence in the record that explains how these findings undermine Dr. Edelstein's conclusions regarding the severity of Plaintiff's pain, fatigue, and weakness and the limitations caused thereby. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Because the ALJ failed to explain how her reasoning is supported by evidence in the record, it cannot serve as specific and legitimate reasoning to reject Dr. Edelstein's opinion.

### B. The ALJ Erred in Rejecting Plaintiff's Symptom Testimony

While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen*, 80 F.3d at 1281)). Here, Plaintiff testified that she suffered from a variety of impairments—including lupus, Sjögren's syndrome, Hashitmoto's thyroiditis, fibromyalgia, migraines, knee pain, wrist pain, and back pain—that caused pain, fatigue, and weakness and prevented her from working. (R. at 27–30.) Indeed, Plaintiff testified that she experienced about two "lupus shutdown[s]" a week, during which she slept fifteen hours, did not get out of bed, and did not shower. (R. at 54–55.)

In finding that Plaintiff was capable of sedentary work, and rejecting Plaintiff's symptom testimony, the ALJ reasoned that Plaintiff's allegations of debilitating limitations arising from her impairments were inconsistent with physical examinations of Plaintiff. (R.

at 31, 33.) Specifically, the ALJ repeatedly noted that physical examinations revealed the following: intact cranial nerves, full strength throughout, and no edema, clubbing, cyanosis, carotid bruits, crepitus, tenderness, swelling, deformities, or decreased range of motion in the joints or spine. (R. at 28–31, 33.) Again, although these findings may undermine Plaintiff's symptom testimony, the ALJ failed to cite evidence in the record that establishes this fact. As a result, the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

### C. Credit-as-True Rule Does Not Apply

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than further proceedings. (Pl.'s Br. at 15–16.) The credit-as-true rule only applies in cases that raise "rare circumstances" that permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler*, 775 F.3d at 1099–1102. These rare circumstances arise when three elements are present. First, the ALJ must fail to provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

The Court has reviewed the record and agrees with Defendant that the record is not fully developed and that uncertainty remains as to whether Plaintiff is disabled under the Act. The reasons the ALJ provided for rejecting the opinion of Dr. Edelstein and the symptom testimony of Plaintiff were not legitimate. In light of this, the ALJ must reanalyze each.

Accordingly, the Court will remand this matter to the ALJ for further development of the record and a disability determination.[1]

**IT IS THEREFORE ORDERED remanding** this matter to the Social Security Administration for further proceedings consistent with this Order. Specifically, the ALJ must reanalyze the opinion of Dr. Edelstein and Plaintiff's symptom testimony.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly and close this case.

Dated this 8th day of August, 2019.

Honorable Steven P. Logan
United States District Judge

---

[1] In light of this ruling, the Court need not address Plaintiff's arguments that the Appeals Council erred in refusing to consider a letter from Dr. Edelstein submitted in support of Plaintiff's request for review. (R. at 14–15.)